UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RICHARD DANIEL BENSON,**
    **Petitioner,**
v.               Case No. 19-CV-100

**BRIAN FOSTER,**
    **Respondent.**

---

## DECISION AND ORDER

Richard Daniel Benson has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. For the reasons that follow, Benson's petition is denied.

### I. BACKGROUND

Petitioner is a Wisconsin state prisoner, incarcerated for convictions on charges of (1) second-degree sexual assault of a child under age sixteen; (2) attempted first-degree sexual assault of a child under age thirteen; (3) first-degree sexual assault of a child under age sixteen by use of force; (4) second-degree sexual assault of a child under age sixteen; (5) incest; and (6) felony intimidation of a witness in the Milwaukee County Circuit Court. ECF No. 8-1.

**A. Circuit Court Proceedings**

Initially, the parties reached a plea agreement in which Benson agreed to plead guilty to charges (1) and (2), with the State agreeing to recommend dismissal with prejudice of the remaining charges. ECF No. 8-5, ¶ 2. The circuit court accepted petitioner's guilty pleas and dismissed the remaining charges with prejudice. *See* ECF No. 8-9 at 23:5-8 ("We'll adjourn the matters for sentencing. Court will grant the State's motion, dismiss the charges in case 13CF662, 13CF1478, and 13CF1799. It is a

dismissal with prejudice."). Before sentencing, petitioner moved to withdraw his guilty pleas. ECF No. 8-5, ¶ 3. The circuit court granted these motions and subsequently reinstated the dismissed charges without objection from petitioner's trial counsel. ECF No. 8-11 at 17-18. The State pursued all original charges at trial.

During *voir dire*, the prosecutor exercised a peremptory strike and removed Juror 5,[1] an African American woman, from the panel of prospective jurors. *Id.*, ¶ 4; ECF No. 8-13 at 105:21-24. Petitioner, who is also African American, made a *Batson* objection. *Id.* at 106:1-20.[2] The prosecutor offered three explanations for her strike: (1) Juror 5 said she lived on the "north side" of Milwaukee,[3] where some of the crimes that were the subject of the trial were committed; (2) Juror 5 said that she had two boys who were "roughly similar in age to the defendant"; and (3) Juror 5 was remarkably unresponsive[4] during *voir dire*. *See id.* at 107:8-108:2. The circuit court accepted all three reasons. *Id.* at 108:22-109:18. Petitioner was convicted on all charges and sentenced to fifty years of initial confinement and twenty-five years of extended supervision. ECF No. 8-5, ¶ 5.

---

[1]  Juror 5's only appearance in the transcript is her introduction: "I live in Milwaukee, Wisconsin, north side. Single. Two children. Two boys 33 and 38. I am a disability clerk at Northwestern Mutual. No prior jury service." ECF No. 8-13 at 12:10-12. *See also id.* at 9-10 (explanation of requested information).

[2]  Specifically, Benson's trial counsel argued that the "north side" is too large a place to be a specific reason for striking a juror because some of the alleged crimes occurred there and that having sons the same age as defendant was not cause for a strike. *Id.* This passage of the transcript, along with trial counsel's later contention that Juror 5 was the only black juror in the pool, is the only mention of the *Batson* challenge at issue. *See id.* at 109:24-110:8.

[3]  As to where potential jurors were from, the circuit court instructed the panel to give only a general indication of where they lived. *See* ECF No. 8-13 at 10:4-9 ("As to your residence, if you live in the City of Milwaukee, just tell us the geographic location that you live in: North side, south side, east or west. We are not looking for an address.").

[4]  Benson's trial counsel also noted this. *See* ECF No. 8-13 at 106:2-5 ("[Juror 5] appears to be the only African-American on the jury panel and she was remarkably quiet throughout. She didn't raise her hand about having any issues or problems with anything that was brought up.").

2

## B. Decision of the Wisconsin Court of Appeals

Petitioner appealed, raising *Batson* and ineffective assistance of trial counsel claims. *See* ECF No. 8-2. The Wisconsin Court of Appeals affirmed. The dismissal of charges as part of plea negotiations did not constitute an "acquittal" for Double Jeopardy purposes because the circuit court made no ruling equivalent to a "court-decreed acquittal" under U.S. Supreme Court precedent. ECF No. 8-5, ¶ 10. Specifically, the trial court never found that the State had insufficient proof to convict and any distinction between a dismissal with prejudice vs. a dismissal without prejudice is irrelevant where petitioner repudiated the plea agreement that brought about the dismissals. *Id.*, ¶¶ 11-13. Trial counsel was not ineffective for failing to challenge reinstatement of the dismissed charges because such a motion would have been properly denied. *Id.*, ¶ 14.

As to the *Batson* challenge, the appeals court found that petitioner's challenge of the "north side" rationale as not race-neutral had not been raised below, explaining that his trial counsel's objection was "only that the north side of Milwaukee is a very large place and Juror 5's residence there does not demonstrate much of a connection to Benson's case." *Id.*, ¶ 22.[5] Thus, argument that the prosecutor's "north side" reason was not race-neutral was not properly before the appeals court and had no bearing on whether the circuit court was clearly erroneous. *Id.*

Likewise, under step three, Benson's full critique of the prosecutor's reasons on appeal should have been made before the circuit court; trial counsel could have requested adjournment for *Batson* hearing, however such a request was not made. *Id.*, ¶ 25. The

---

[5] *See also* ECF No. 8-13 at 106:11-14 ("The north side of Milwaukee is a very large place with two hundred to three hundred thousand people there. She gave no more specifics about where on the north side or any connection to this case.").

appeals court then criticized his juror comparison arguments as "mak[ing] up facts, draw[ing] unsupportable inferences, and repeatedly cit[ing] to evidence outside the record." *Id.*, ¶ 26. Such facts were "not properly before th[e] court" and the panel "decline[d] to take judicial notice of the multitude of 'evidence' Benson attempt[ed] to introduce." *Id.*, ¶ 27. Further, Benson's claim that the prosecutor's "north side" reason was pretextual was not made in circuit court, either. *Id.*, ¶ 28.

On appeal, Benson also identified Juror 25,[6] who ultimately served on the jury, as proof of the State's discriminatory intent. *Id.*, ¶ 29. *See also* ECF No. 8-2 at 16-17. The appeals court dismissed this point, conceding that while some similarities existed, Benson did not "identify any other potential juror who also lived in the neighborhood in which the *majority* of the crimes occurred, had sons close in age to Benson, *and* was 'remarkably quiet' during *voir dire.*" ECF No. 8-5, ¶ 29 (emphasis added). "At most, the other potential jurors Benson identifie[d] for comparison could have met two out of the three reasons the State gave for striking Juror 5." *Id.*

The Wisconsin Supreme Court denied review. ECF No. 8-8. Benson then filed this federal habeas petition, where he renews his ineffective assistance-double jeopardy and *Batson* claims, requesting that this court find that the court of appeals "unreasonably applied *Batson* and *Chatman*, and… *Strickland*," vacate his convictions and sentences, and grant him a new trial. ECF No. 1 at 13.

---

[6] Juror 25 is a white woman who had four children between the ages of 38 and 46 (Benson was 42), lived in the same general area of one of the crimes (as did Juror 5), and did not answer any questions during *voir dire. Id.*, ¶ 29.

4

## II. DISCUSSION

Benson's petition arises under 28 U.S.C. § 2254. A district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). If a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d). A petitioner challenging a factual determination shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"[O]n habeas review, federal courts are usually limited to a deferential review of the reasonableness, rather than the absolute correctness, of a state court decision." *Maier v. Smith*, 912 F.3d 1064, 1069 (7th Cir. 2019) (citing *Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir. 2012)). "For purposes of reasonableness review, 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.'" *Mosley*, 689 F.3d at 844 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In reviewing the merits of a petition for habeas relief, I look to "the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)). In this case, that decision is from the

Wisconsin Court of Appeals. ECF No. 8-5. The appellate court need only have taken "the constitutional standard seriously and produced an answer within the range of defensible positions." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (citing *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006)).

**A. Petitioner's *Strickland* & Double Jeopardy Claim**

To succeed on his claim of ineffective assistance of counsel, Felton must show his counsel's performance was deficient and he was prejudiced as a result. *Felton*, 926 F.3d at 463 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the defendant must demonstrate that counsel's actions or inactions "were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. To establish prejudice, petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* However, the "Sixth Amendment does not require counsel... to press meritless arguments before a court." *Peterson v. Douma*, 751 F.3d 524, 533 (7th Cir. 2014) (quoting *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir.1993)).[7]

The Double Jeopardy Clause of the Fifth Amendment "bars retrial following a court-decreed acquittal." *Evans v. Michigan*, 568 U.S. 313, 318 (2013). An acquittal encompasses "any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Id.* (citations omitted). This includes "a ruling by the court that the evidence is insufficient to convict," a "factual finding [that] necessarily establish[es] the

---

[7] Petitioner concedes that his claim for ineffective assistance of counsel depends entirely on a finding that a motion from trial counsel attacking the reinstatement of the charges on Double Jeopardy grounds would have been successful. ECF No. 9 at 10.

6

criminal defendant's lack of criminal culpability," and any other "rulin[g] which relate[s] to the ultimate question of guilt or innocence." *Id.* at 319 (quoting *U.S. v. Scott*, 437 U.S. 82, 91, 98, and n. 11 (1978). These sorts of substantive rulings stand apart from procedural rulings that may also terminate a case midtrial, which we generally refer to as dismissals or mistrials. *Id.* Procedural dismissals include rulings on questions that "are unrelated to factual guilt or innocence," but "which serve other purposes," including "a legal judgment that a defendant, although criminally culpable, may not be punished" because of some problem like an error with the indictment. *Id.* (quoting *Scott*). For jury trials, jeopardy attaches when "when a jury is empaneled and sworn." *Martinez v. Illinois*, 572 U.S. 833, 839–40 (2014) (quoting *Serfass v. United States*, 420 U.S. 377, 388 (1975)).

Petitioner argues that the trial court's dismissal of the charges "with prejudice," paired with a representation by the State that elements of the charge could not be proven, amounts to a substantive ruling for Double Jeopardy purposes. ECF No. 9 at 11-12. Having reviewed the transcript of the plea hearing, it is unclear where the prosecutor made such a representation. *See* ECF No. 8-9 at 4:15-21 (explaining terms of the plea deal to the judge). Furthermore, despite the trial court's dismissal of the charges being "with prejudice," circumstances do not indicate that this was anything more than a procedural dismissal with no factual finding. There was no ruling on insufficiency of proof, no factual finding as to petitioner's lack of culpability, no jury empaneled at the time, or any other factor suggesting that the trial court's ruling amounted to a "court-decreed acquittal" that would bar retrial. Rather, the trial court's ruling was merely a recognition of the parties' agreed-upon dismissal of some charges in exchange for petitioner's guilty plea on other charges. At no point did the trial court acknowledge any inability on the

7

Case 2:19-cv-00100-LA   Filed 05/28/20   Page 7 of 12   Document 16

State's part to prove those charges beyond a reasonable doubt. A motion by trial counsel to throw out those charges on Double Jeopardy grounds would have been futile and the appellate court's ruling therefore was not contrary to or an unreasonable application of Supreme Court precedent, nor was it based on an unreasonable determination of the facts. Petitioner is not entitled to relief on this claim.

## B. Petitioner's *Batson* Claim

Purposeful racial discrimination in jury selection violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). When evaluating a *Batson* objection to a peremptory strike, the trial court is required to engage in a three-step analysis. *Miller–El v. Cockrell*, 537 U.S. 322, 328–29 (2003). First, it determines whether the strike's opponent has made a *prima facie* showing that the strike was made based on race. *Id.* at 328. If that showing has been made,[8] the burden of production shifts to the strike's proponent to present a nondiscriminatory explanation for which nearly "any race-neutral reason" will suffice, "even if it is not a 'persuasive, or even plausible' reason." *Coulter v. McCann,* 484 F.3d 459, 465 (7th Cir. 2007) (quoting *Purkett v. Elem,* 514 U.S. 765, 768 (1995)). Finally, at the third step, the trial court "weigh[s] the evidence and determine[s] whether the ... nondiscriminatory reason for the strike is credible" or if purposeful discrimination has been shown. *Id.* At this step, the court evaluates the persuasiveness of the race-neutral justification and decides whether it is genuine or pretextual. *Morgan v. City of Chicago*, 822 F.3d 317, 326–27 (7th Cir. 2016) (citing *Miller–El v. Dretke*, 545 U.S.

---

[8] Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot. *Hernandez v. New York*, 500 U.S. 352, 359 (1991).

8

231, 239–41 (2005)). The decisive question will usually be whether counsel's race-neutral explanation should be believed, the best evidence for which often will be the demeanor of the attorney who exercises the challenge. *Hernandez*, 500 U.S. at 365. *See also Williams v. Chrans*, 957 F.2d 487, 491 (7th Cir. 1992) ("The relevant issue is whether, based on what the prosecution knew about a juror at the *voir dire*, the reasons for striking the juror were race-neutral."). This involves an "evaluation of credibility," which is entitled to "great deference" on review and "must be sustained unless it is clearly erroneous." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (citations omitted).

I start my analysis by briefly recounting the *Batson* challenge made in the circuit court. Petitioner's trial counsel objected to the prosecutor's peremptory strike of Juror 5 on two grounds: (1) the "north side" rationale was insufficiently specific, as the "north side" composes a large chunk of the city; and (2) Juror 5 having two sons close in age to petitioner was simply irrelevant. ECF No. 8-13 at 106:1-20. The prosecution explained that it struck Juror 5 because (1) she lives on the north side, where some of the alleged crimes were committed; (2) she has two boys roughly similar in age to the defendant; and (3) she was inattentive during *voir dire*. *Id.* at 107:8-20. The circuit court accepted the prosecutor's reasons, denied the challenge, and the case proceeded to trial. *Id.* at 108:22-109:20. The appellate court affirmed, noting that while some jurors that were selected had similar characteristics, none presented all three traits that the prosecution cited. ECF No. 8-5, ¶ 29.[9]

---

[9] The appellate court declined to consider arguments presented for the first time on appeal and evidence not properly subject to judicial notice. *See* ECF No. 8-5, ¶¶ 22, 25-28. Petitioner argues that these determinations were wrong and the claims rejected by the appellate court should be considered here. However, if the state court's decision to decline to address the merits of a state prisoner's constitutional claim was based on an independent and adequate state procedural ground, the district court is generally barred from reviewing the claim in a federal habeas petition. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "[I]n order to foreclose review on habeas, the state court must actually state in plain language that

9

Petitioner argues that a comparative juror analysis reveals that each of the prosecutor's explanations were pretextual and that Juror 5 was struck because she, like petitioner himself, is black.[10] However, federal habeas review of a state court *Batson* decision is highly deferential; the issue before me is not whether this *Batson* decision was correct, but whether the appellate court's finding of no clear error is an unreasonable application of Supreme Court precedent. The AEDPA imposes an even greater level of deference than direct review, "demand[ing] that state-court decisions be given the benefit of the doubt." *Felkner*, 562 U.S. at 598 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). Thus, a federal habeas court can only grant a petition "if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Rice v. Collins*, 546 U.S. 333, 338 (2006). Recent Supreme Court precedent illustrates this standard. In *Foster v. Chatman*, which petitioner cites as his primary authority, evidence from the prosecution's file was overwhelming, including over a dozen documents showing a deliberate effort to strike black jurors. 136 S.Ct. at 1744. *See also id.* at 1755 ("The sheer number of references to race in that file is arresting."). In *Miller-El v. Dretke*, the State had

---

it is basing its decision on the state procedural default and that other grounds are reached only in the alternative." *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998). Such is the case here. The appellate court explicitly stated that the claims were forfeited and/or its supporting evidence not properly submitted, briefly addressing the merits with qualifiers such as "even if," "nonetheless," and "moreover." And petitioner has not demonstrated that an exception allowing consideration of forfeited claims applies here. Accordingly, my review is limited to the appellate court's decision on the merits. *See Greene v. Pollard*, 677 F.Supp.2d 1073, 1092 (W.D. Wis. 2009) ("Wisconsin appellate courts long have held that failure to advance arguments in the trial court waives the right to present them on appeal.").

Petitioner further argues that the appellate court's refusal to consider this evidence is contrary to the Supreme Court's decision in *Foster v. Chatman*, 136 S.Ct. 1737 (2016), because the *Chatman* Court considered new arguments and evidence post-trial. However, as respondent rightly notes, the evidence introduced there was newly discovered and admitted into the record by the state court, which then considered that evidence in ruling on the merits. *See id.* at 1743-45. Here, the evidence was not admitted into the record by the state court, nor was it unavailable to the defendant at the time of the challenge.

[10] Petitioner also objects to the appellate court's treatment of Juror 28 and its use of the word "neighborhood" to describe Milwaukee's north side. ECF No. 15 at 9-11. Because these arguments were first raised in reply, I will not consider them. *Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997) (arguments not raised in in the initial brief are waived).

10

peremptorily challenged 12% of qualified nonblack panel members but eliminated 91% of the black ones by the time a jury was chosen, and discriminatory intent was further proven by the prosecution's own notes. 545 U.S. at 266.

Upon review of the record, petitioner's case simply does not rise to this level, nor did petitioner carry his high burden of proving purposeful discrimination. *Rice*, 546 U.S. at 338 ("[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."). It was not unreasonable to credit the prosecutor's race-neutral explanations as legitimate on their own merits. A fair-minded jurist could conclude that striking Juror 5 for being from the general area where two of the alleged crimes took place is a plausible, race-neutral reason. The same holds for having two sons relatively close in age to the defendant, a forty-two-year-old man. And deference to the circuit court's acceptance for the "unresponsive" reason would not be unreasonable where the circuit court expressly acknowledged as much and a reviewing court cannot discern demeanor and other non-verbal cues or behavior from a mere transcript of the proceedings. *See* ECF No. 8-13 at 109:3-10 ("I can't say clearly whether or not she raised her hand about watching television, but she really was very unresponsive during all of the questioning… The fact that she didn't respond to anything I think is a concern."). This fact also makes petitioner's comparative juror arguments even more difficult to prove up here, as a prospective juror's silence reflected in a transcript does not necessarily mean that a juror's attentiveness (or lack thereof) was comparable to that of Juror 5. Finally, further review of the record does not indicate that the appellate court's comparative juror determination was unreasonable. *See* ECF No. 8-5, ¶ 29 ("At most, the other potential

11

Case 2:19-cv-00100-LA    Filed 05/28/20    Page 11 of 12    Document 16

jurors Benson now identifies for comparison could have met two out of the three reasons the State gave for striking Juror 5.").

Challenging a state-court *Batson* decision in federal habeas is a difficult standard for petitioners to meet. *See, e.g.*, *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("[T]here is no basis for reversal on appeal unless the reason given is completely outlandish or there is other evidence which demonstrates its falsity.") (quoting *Tinner v. United Ins. Co. of Am.,* 308 F.3d 697, 703 (7th Cir. 2002)); *Renico*, 559 U.S. at 779 ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."). The record does not indicate that the appellate court's decision was an unreasonable application of Supreme Court precedent that meets this high standard. Petitioner has not shown that he is entitled to relief on this claim.

## III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that Benson's petition for the writ of habeas corpus is **DENIED** and this case is **DISMISSED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 28th day of May, 2020.

s/Lynn Adelman
LYNN ADELMAN
District Judge